UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM J.R. EMBREY,

        *Plaintiff*,

   v.

THE UNITED STATES OF AMERICA, et al.,

        *Defendants*.

Civil Action No. 1:21-cv-0235 (CJN)

## MEMORANDUM OPINION

Proceeding *pro* se, William J.R. Embrey filed this lawsuit against the United States and the Director of the Federal Bureau of Prisons claiming that the alleged failure to credit him 508 days of jail time violated his constitutional and common law rights. *See generally* Compl., ECF No. 1. He seeks compensatory relief under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny for the alleged violations of his rights under the Fourth, Fifth, and Sixth Amendments, as well as under the Federal Tort Claims Act, 28 U.S.C. § 2674, based on the common law torts of false imprisonment and negligence. *See generally* Compl. Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). *See* Defendants' Mot. to Dismiss ("Defs.'s Mot."), ECF No. 11. For the reasons that follow, the Court grants the Defendants' motion.

1

## I.    Factual and Procedural Background[1]

In 1968, Embrey stole 793 dollars from Webbers Falls State Bank located in Muskogee County, Oklahoma. *See Embrey v. United States*, 240 F. App'x 791, 792 (10th Cir. 2007) (Gorsuch, J.). The United States District Court for the Eastern District of Oklahoma sentenced him to eight years of incarceration. *Id.* Shortly after his release, he "committed another bank robbery." *Id.* This time, the United States District Court for the Western District of Missouri sentenced him to a 40-year term of confinement. *See Embrey v. Hershberger*, 131 F.3d 739, 742 (8th Cir. 1997) (Lay, J., dissenting). Embrey's 40-year sentence commenced on September 19, 1980.

On August 14, 1997, while Embrey was serving his 40-year sentence, a federal court in North Dakota released him from custody pursuant to an appeal bond. *See Embrey v. Norris*, No. 0:15-CV-45-HRW, 2016 WL 3820442 at *3 (E.D. Ky. July 12, 2016). The next day, the Federal Bureau of Prisons placed Embrey's sentence computation into inoperative mode (*i.e.* the clock on Embrey's 40-year sentence stopped running). *Id.* The Eighth Circuit affirmed Embrey's conviction a couple months later. *Id.* About a year after that, a federal court in North Dakota granted the government's motion to revoke Embrey's bond. *Id.* Authorities arrested Embrey in December 1998, and on December 6, 1998, the Bureau resumed calculating the 40-year sentence he had received in 1980. *Id.*

In the same month that Embrey returned to prison, federal prosecutors in Missouri charged him as a felon in possession of a firearm for an offense committed during his year or so out of

---

[1] The Court has relied in large part on *Embrey v. Norris*, No. 0:15-CV-45-HRW, 2016 WL 3820442 (E.D. Ky. July 12, 2016) for the facts and procedural history here. In that case, Embrey brought the same claims and similar arguments as he does here. There, the court denied Embrey's 28 U.S.C. § 2241 petition for a writ of habeas corpus for failing to exhaust his administrative remedies.

prison. *Id.* In April 2000, Embrey pleaded guilty to violating 18 U.S.C. 922(g). *Id.* The court sentenced Embrey to 262 months of incarceration and ordered Embrey's firearm sentence to run concurrently with his 40-year sentence. *Id.*

According to the Bureau's Sentence Computation Manual, a sentence imposed for an offense that occurred on or before November 1, 1987—such as Embry's 40-year sentence imposed in 1980—cannot be aggregated with a sentence imposed for an offense that occurred on or after November 1, 1987—such as his 262-month sentence imposed in 2000. *Id.* The Bureau therefore prepared a separate sentence computation for the latter offense and computed his 262-month firearm sentence as commencing on April 24, 2000, the date the court imposed the sentence. *Id.* at *4. Embrey received no prior custody credit against the 262-month sentence for the period of incarceration between December 6, 1998 and April 24, 2000. *Id.* The Bureau instead applied the 508 days of credit to his 40-year sentence. *Id.; see also* 18 U.S.C. § 3585(b) (specifying that a defendant cannot receive "credit toward the service of a term of imprisonment" where the defendant has already received credit for that time "against another sentence").

On September 27, 2007, the Bureau released Embrey from his 40-year sentence. *See Embrey v. Norris*, 2016 WL 3820442 at *4. He remained in the Bureau's custody, however, on his 262-month firearm sentence. *Id.* The Bureau ultimately released Embrey from custody on the firearm sentence on November 9, 2018. *See* Compl. ¶ 20.

Embrey filed this lawsuit at the beginning of 2021. *See generally id.* Based on a charitable reading of his Complaint, Embrey seems to name as Defendants the United States as well as the Director of the Federal Bureau of Prisons, Michael Carvajal, in both his official and individual capacities. *Id.* As Embrey sees things, the Defendants failed to credit him with 508 days of jail credit on his 262-month firearms sentence, resulting in his wrongful imprisonment from June 24,

3

2017, through November 9, 2018.  *Id.*  He seeks relief under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny for alleged violations of his rights under the Fourth, Fifth, and Sixth Amendments, as well as under the Federal Tort Claims Act based on the common law torts of false imprisonment and negligence.  *Id.*[2]  Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).  *See* Defs.'s Mot.

## II.     Standards of Review

**Civil Rule 12(b)(1).**  Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint if the court lacks subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  When ruling on a motion filed under Rule 12(b)(1), the court must "treat the complaint's factual allegations as true" and must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (quotation omitted).  Although the court need not accept inferences unsupported by the factual allegations, the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 56 (D.D.C. 2015) (quotation omitted).

**Civil Rule 12(b)(3).**  Federal Rule of Civil Procedure 12(b)(3) requires dismissal of a complaint if it was filed in the improper venue.  *See* Fed. R. Civ. P. 12(b)(3).  When a plaintiff brings suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28

---

[2] *Ballard v. Holinka*, 601 F. Supp. 2d 110, 119 (D.D.C. 2009) (quotation omitted) ("A *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.").

4

U.S.C. § 1406(a).  In deciding whether venue is proper, courts "accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17 (D.D.C. 2013).  The Court need not, however, accept the plaintiff's legal conclusions as true, and it may consider material outside of the pleadings.  *Id.*

**Civil Rule 12(b)(6).**  Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss filed under Rule 12(b)(6), a plaintiff must plead "facts to state a claim of relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court treats the "complaint's factual allegations as true and afford[s] the plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (quotation omitted).  Although the court accepts all well pleaded facts in the complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The claim to relief must be "plausible on its face," *id.*, meaning that the plaintiff must have pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

### A. Defendants' Sovereign Immunity Defense under Rule 12(b)(1)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Although there is some question whether the sovereign immunity of the United States presents a subject-matter jurisdiction question, *see*

---

[3] "In determining whether a complaint fails to state a claim," courts in the typical case "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  The Court of Appeals, moreover, has instructed district courts to use a more lenient approach when evaluating a motion to dismiss a pro se plaintiff's complaint.  *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (noting that "a district court errs in failing to consider a pro se litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss").

*Mowrer v. United States Dep't of Transportation*, 14 F.4th 723, 734 (D.C. Cir. 2021) (Katsas, J., concurring); *id.* at 744 (Randolph, J., concurring), precedent dictates that the Court treat the lack of a clear waiver of *federal* sovereign immunity as a jurisdictional defect, *see Meyer*, 510 U.S. at 475 (holding that federal sovereign immunity is jurisdictional and that the United States "has not rendered itself liable under [the Federal Tort Claims Act] for constitutional tort claims"); *Straw v. United States*, 839 F. App'x 565, 566 (D.C. Cir. 2021) ("The district court properly dismissed the case for lack of subject matter jurisdiction because appellant's claims against the United States for monetary damages under the Federal Tort Claims Act based on constitutional violations are barred by sovereign immunity.").[4]  A court therefore lacks subject matter jurisdiction to grant relief absent clear congressional consent to permit a claim against the United States or federal officers acting in their official capacity.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *see also Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) (holding that "no *Bivens* claim is available against [federal officers] in their official capacities.").

In his Complaint, Embrey alleges both common law tort and constitutional claims arising from the Bureau's decision not to credit 508 days of custody towards his 262-month firearm sentence imposed in 2000.  *See generally* Compl.  A generous reading of the Complaint suggests that Embrey targets for compensatory relief the United States, the Bureau's Director in his official capacity, and the Director in his individual capacity.  *Id.*  The Court, however, lacks subject matter jurisdiction over Embrey's claims against the United States and the Director in his official capacity

---

[4] The Court acknowledges the distinction between federal and state sovereignty immunity and declines, as it has no reason to do so, to unpack the legal significance of the distinction here.  *See generally PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2264 (2021) (Gorsuch, J., dissenting); Caleb Nelson, *Sovereign Immunity As A Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559 (2002).

because sovereign immunity bars those claims. *Jordan v. Quander*, 882 F. Supp. 2d 88, 97 (D.D.C. 2012) (ruling that "the Court lacks subject matter jurisdiction to entertain plaintiff's claims for money damages against [the United States, the Court Services and Offender Supervision Agency,] or any of its employees sued in their official capacities").

### B. Defendants' Improper Venue Defense under Rule 12(b)(3)

*Venue as to Embrey's Claims under the Federal Torts Claim Act.* Under the Federal Tort Claims Act, venue is proper in the judicial district where the plaintiff resides or where "the act or omission complained of occurred." 28 U.S.C. § 1402(b). The judicial district "wherein the act . . . occurred" is the district in which "sufficient activities giving rise to the plaintiff's cause of action took place." *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009) (quotation omitted). Courts in this district must examine venue issues with a careful eye to guard against the possibility that plaintiffs might "manufacture venue in the District of Columbia," *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). The "mere involvement on the part of federal agencies who are located in [the District] is not determinative" of venue. *Spotts v. United States*, 562 F. Supp. 2d 46, 55 (D.D.C. 2008) (quotation omitted).

Venue is improper in this District for Embrey's claims under the Federal Torts Claim Act because he neither resides in the District nor did the acts giving rise to his claims have a sufficient connection to the District. First off, Embrey lives in North Dakota; not the District. *See* Compl. ¶ 7. That closes off the first avenue to achieve venue. Second, the actions complained of here occurred outside of the District. A federal court in the Western District of Missouri sentenced Embrey to 262 months incarceration for unlawful possession of a firearm as a felon; he served his time outside of the District; and he does not allege that the failure to credit his sentence occurred here. Indeed, Embrey previously brought a *pro se* petition for writ of habeas corpus in the Eastern

7

District of Kentucky, against the warden of the prison where he was incarcerated, contending that the Bureau had failed to credit his sentence for the same 508 days at issue here. *See Embrey v. Snyder-Norris*, No. 0:15-CV-45-HRW, 2015 WL 7681245 (E.D. Ky. Nov. 24, 2015). That all means that "any injuries that [Embrey] suffered did not occur in this district as he was never incarcerated here." *Zakiya v. United States*, 267 F. Supp. 2d 47, 58 (D.D.C. 2003). Whatever action the Bureau may have taken in the District that led to Embrey's alleged false imprisonment does mean that District represents the proper venue.

Embrey pushes back, arguing that "venue is proper in the District Columbia [because] the United States is centered in Washington, D.C., and Defendant Director of [the Bureau] is located in Washington, D.C., [and] each are legally bound and obligated to ensure that all federal prisoners, including Plaintiff, are released from prison when their sentence, counting good time and pre-sentence jail time, is legally completed." Compl. ¶ 5. Again, however, courts in this District cast a wary eye toward these type of venue arguments because plaintiffs can easily manufacture venue by naming high government officials and agencies as defendants. *See Cameron*, 983 F.2d at 256. That explains why courts have found that when "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia." *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008) (quotation omitted). In short, a government official or a government agency's attenuated or insignificant involvement does not support venue in the District. *See Marks v. Torres*, 576 F. Supp. 2d 107, 111 (D.D.C. 2008).

*Venue as to Embrey's* Bivens *Claims.* Venue is likewise lacking for Embrey's constitutional claims brought under *Bivens*. A cause of action under *Bivens* and its progeny may

8

be brought in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b); *see Coltrane v. Lappin*, 885 F. Supp. 2d 228, 234 (D.D.C. 2012). As to the first, no evidence suggests that all Defendants reside in the District. As to the second, none of the alleged events giving rise to Embrey's claims took place in the District. Embrey's allegations arise from conduct that occurred while incarcerated outside of the District. As to the third, Embrey provides no argument as to why he cannot file this lawsuit in a district where he once was incarcerated. Adding that all up means that the District does not present a proper venue for Embrey's *Bivens* claims.

### C. Defendants' Failure to State a Claim Defense under Rule 12(b)(6)

It is well settled that "*Bivens* claims cannot rest merely on respondeat superior." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997). A plaintiff instead must allege the personal involvement of the defendant in the events that gave rise to the plaintiff's claim. *Id.*; *Johnson v. United States*, 642 F. Supp. 2d 1, 5 (D.D.C. 2009) (dismissing a *Bivens* claim against the Director of the Bureau because the "Director's supervisory role as the head of the [Bureau] does not render him personally liable for the alleged wrongful acts of the [Bureau's] employees").

A liberal reading of Embrey's Complaint suggests that he has sued the Director of the Bureau, Carvajal, in his official and his individual capacity. *See generally* Compl. In particular, Embrey claims that the Director should be held liable because he knew that authorities were holding Embrey past his proper release date and that he failed to act to rectify the situation. Compl. ¶¶ 3–4, 37–38. Nowhere, however, does Embrey allege that Director Carvajal calculated or was involved in calculating Embrey's sentence computation. Because Embrey cannot rely on

respondeat superior to sue Director Carvajal under *Bivens*, the Court concludes that Embrey has failed to plead factual allegations sufficient to state a claim under *Bivens* against the Director.

Even assuming that Embrey did state a viable claim against Director Carvajal in his individual capacity for failing to release Embrey on his alleged proper release date, qualified immunity would shield the Director from suit. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam). For a plaintiff to strip an officer of qualified immunity, then, the plaintiff must allege facts sufficient to "show the officer's conduct violated a constitutional right" and that the violated "right was clearly established" at the time the alleged conduct took place. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 235–36 (2009) (holding that courts have the discretion to decide "which of the two prongs of the qualified immunity analysis [to address] first in light of the circumstances in the particular case at hand"). Embrey fails to allege facts adequate to support his claim that Director Carvajal infringed upon his constitutional rights or that the Director violated clearly established law in so acting.

One last note. Even if Embrey could get past sovereign immunity and venue defects with regards to his claims under the Federal Tort Claims Act and his claims under *Bivens*, his claims would fail under Rule 12(b)(6) because he lodged them past the applicable statute of limitations periods. Under the Federal Tort Claims Act, a tort claim against the federal government is barred unless the plaintiff presents the claim in writing to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b); *United States v. Kubrick*, 444 U.S. 111, 113 (1979). If the agency denies the claim, the plaintiff has "six months after the date of mailing . . . of notice of final denial by the agency to which it was presented" to file an action in federal court.

28 U.S.C. § 2401(b). On October 5, 2015, the Bureau denied Embrey's claim. *See Embrey*, 2016 WL 3820442, at *2. Embrey failed to bring this action within six months of the Bureau's decision, opting instead to file this action on January 22, 2021, which means he brought his claims under the Federal Tort Claims Act outside of the statute of limitations period. *See* Compl. Embrey's claims under *Bivens* fare no better. District law governs the statute of limitations period for claims under *Bivens* brought in this Court. *See Pierce v. Mattis*, 256 F. Supp. 3d 7, 12 n.2 (D.D.C. 2017). Though questions surround whether a one-year or a three-year statute of limitations period govern claims akin to Embrey's claims, *Jefferson v. Harris*, 170 F. Supp. 3d 194, 212 (D.D.C. 2016), Embrey's claims miss the mark under either a one or a three-year limitation period. He filed this lawsuit on January 22, 2021, more than five years after the Bureau denied his claims and more than three years after his alleged mandatory release date of June 24, 2017. *See* Compl. ¶ 16.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. An Order will be entered contemporaneously with this Memorandum Opinion.

In the Court's view, Embrey's suit and its dismissal should qualify as a strike as described in 28 U.S.C. § 1915(g). *See Simons v. Washington*, 996 F.3d 350 (6th Cir. 2021).

DATE: February 9, 2022

CARL J. NICHOLS
United States District Judge